# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:08-cr-211-(1) (CSH) |
| v. | |
| DWAYNE JACOBS, a.k.a. "Stretch," | **OPINION AND ORDER** |
| Defendant. | |

HAIGHT, Senior District Judge:

This case comes before the Court upon eleven pretrial motions filed by defendant Dwayne Jacobs ("Jacobs"), all of which relate to the preservation, discovery, or disclosure of materials sought for the purpose of assisting in Jacobs's defense. The Court has examined those motions and the government's response and determined that these motions do not require oral argument.

## I.    Background

Jacobs is charged with two drug-related criminal counts. Count One charges him with conspiracy to possess with intent to distribute and to distribute five grams or more of a mixture or substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), & 846. Count Two charges him with possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(C).

Jacobs was arrested and presented on these charges on November 4, 2008. On March 18, 2009, the government filed notice of its intent to rely on a prior conviction that subjects the defendant to the enhanced sentencing provisions of 21 U.S.C. § 841(b).

Jacobs originally had a co-defendant, Keisha Rhodes.  On June 4, 2009, defendant Rhodes entered guilty pleas on four counts, including Count One (the conspiracy count) and three separate counts that did not name Jacobs as a defendant.

In a Scheduling Order dated May 1, 2009 [doc. #51], this Court set jury selection to begin on September 22, 2009, with trial to commence immediately thereafter.

## II.    Defendant's Motion for Disclosure of Specific Brady Material [doc. #72], and Defendant's Motion for Giglio Material [doc. #74]

### A.          Standard for Pretrial Production of Materials

In criminal prosecutions, the government must produce "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  This obligation also includes evidence that can be used to impeach a government witness.  *Giglio v. United States*, 405 U.S. 150, 154-55 (1972). "*Brady* does not, however, require the prosecution to disclose *all* exculpatory and impeachment material; it need disclose only material 'that, if suppressed, would deprive the defendant of a fair trial.'"  *United States v. Coppa*, 267 F.3d 132, 135 (2d Cir. 2001) (emphasis in *Coppa*) (quoting *United States v. Bagley,* 473 U.S. 667, 675 (1985)).  The prosecutor's disclosure obligations "extend[] only to material evidence . . . that is known to the prosecutor."  *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998).

A prosecutor is presumed to know all information gathered by his office in connection with an investigation of the case.  *Id.*  Further, a prosecutor "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case."  *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). [1]

---

[1]         This duty is triggered by any joint investigation conducted between federal, state, and local agencies or across different federal agencies.  *See United States v. Paternina-Vergara*, 749 F.2d 993,

The *prosecutor* has a duty to discover *Brady* material because "the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of 'reasonable probability' [of materiality] is reached." *Kyles,* 514 U.S. at 437.  It follows that "[a]lthough the Court retains discretion to order additional pre-trial disclosures," as a general principle "the responsibility for assessing whether evidence must be disclosed under *Brady* and *Giglio* rests with the government."  *United States v. Stora Enso N. Am. Corp.*, No. 3:06-cr-323(CFD), 2007 WL 1630366, *2 (D. Conn. June 5, 2007) (Droney, J.); *see also United States v. Ferguson*, 478 F. Supp. 2d 220, 242 (D. Conn. 2007) (Droney, J.) (denying without prejudice a motion for *Brady* materials, "as far as the motion addresses the defendants' concern that the government is not fully producing *Brady* and *Giglio* material"; the Court noted that prosecutors have "adequate incentive to make [disclosure] decisions appropriately (and conservatively) because . . . a *Brady* violation can lead to the reversal of a conviction").

As for the timing of the disclosures required by *Brady*, "material" exculpatory and impeachment information must be disclosed "no later than the point at which a reasonable probability will exist that the outcome would have been different if an earlier disclosure had been made." *Coppa*, 267 F.3d at 142 (citing *Leka v. Portuondo,* 257 F.3d 89, 100 (2d Cir. 2001)).  "[W]e have never interpreted due process of law as requiring more than that *Brady* material must be disclosed in time for its effective use at trial . . . ." 267 F.3d at 142.  However, this District's  local rules create a more urgent disclosure obligation.  *See* Standing Order on Discovery, D. Conn. Local R. Crim. P. app. ¶ (A)(11) (requiring the government to disclose

997-998 (2d Cir. 1984).  At the same time, however, "knowledge on the part of persons employed by a different office of the government does not in all instances warrant the imputation of knowledge to the prosecutor." *Avellino*, 136 F.3d at 255.

*Brady* materials "[w]ithin ten (10) days from the date of arraignment"). As Judge Arterton explained, several years ago, "[t]he District's local rule requiring disclosure of Brady materials ten days after arraignment is not, as *Coppa* makes clear, constitutionally compelled. It is instead based on the Court's inherent power to manage its docket and provide for the orderly and timely disposition of cases." *United States v. Perez*, 222 F. Supp. 2d 164, 171 (D. Conn. 2002) (footnote omitted).

**B.        Jacobs's Requests and the Government's Responses**

Jacobs's motions under *Brady* and *Giglio* appear to be standardized and formulaic requests for every possible type of information that might assist in his defense. Neither of the two motions nor their supporting memoranda describe any special circumstances in this case triggering *Brady* and *Giglio* obligations, with the possible exception that both motions contemplate the existence of a cooperating witness.

In his motion captioned under *Brady*, Jacobs asks the Court to order disclosure of twenty-two categories of materials that he argues should fall under the *Brady* disclosure obligations.

The government has represented that it has made the following disclosures:

> In compliance with the Standing Order, the Government made five different discovery disclosures to the defendant in this case on November 4, 2008, November 12, 2008, December 2, 2008, April 24, 2009 and June 23, 2009. Included in this discovery material was a full set of the audio and video surveillance recorded in connection with the investigation of the defendant, all of the investigative reports created to date in the investigation, all of the laboratory reports received to date related to the seized narcotics in the case, and all of the affidavits related to the arrest and search warrants issued in this case. Also included in these packets were detailed discovery letters summarizing the discovery material provided and responding to each of the items enumerated in the Standing Order.

Further, as of the date of this pleading, the Government has informed the defendant of the name and identifying information of a cooperating defendant/witness who is going to testify against the defendant. Further, upon the filing of this pleading, the Government will provide the defendant with the witness's plea agreement, cooperation agreement and criminal history.

Government's Omnibus Resp. to Def. Dwayne Jacobs's Pretrial Motions [doc. #97] at 1-2 (footnote omitted) [hereinafter "Gov't Resp."].

The defense motion captioned under *Giglio* requests four broad categories of disclosures, including one broad request for a "list of all 'bad acts' allegedly committed by the actual/potential Government witnesses, their families or friends, involving the following subject matter(s), or in exchange for which the actual/potential Government witnesses, their families or friends received the following . . . ." Def.'s Mot. [doc. #74] at 1. The motion then lists seventeen subcategories of "subject matter" or things of value that the government might theoretically have conveyed to its potential witnesses or their family or friends, such as "[i]mmunity from prosecution," "[a] new identity," or "[a] promise of help or favorable recommendation to probation or parole authorities." *Id.* at 2. In response to that motion, the government made the following representation:

The Government has *fully and completely* complied with the Standing Order, which explicitly requires the disclosure of [materials subject to *Brady* requirements]. . . . As with *Brady*, the Government is well aware of its duties and responsibilities with respect to the disclosure of *Giglio* material and has fulfilled its obligations in that regard. If, at any time, the Government learns of any additional *Giglio* material not already disclosed, it will disclose such material immediately. At present, there is one cooperating defendant/witness who will testify against the defendant at trial. As to that witness, upon the filing of this pleading, the Government will provide the defendant with the witness's plea agreement, cooperation agreement and criminal history. Further, the materials already disclosed to the defendant contain statements made by the cooperating witness concerning

-5-

her role in the conspiracy.  Finally, as soon as a report of the Government's interview with the cooperating witness is prepared, it will be disclosed to the defendant.

Gov't Resp. [doc. #97] at 2-3 (emphasis added).

**C.**       **Discussion**

As the Second Circuit's recent opinion in *Coppa* makes clear, the test under *Brady* and its progeny for whether materials must be disclosed is functional, not categorical.  A particular piece of information — or a collection of seemingly unimportant pieces of information — becomes subject to *Brady*'s requirements only if it should appear that, after a full trial, the information *would have been* "material" to the defense, meaning that the failure to disclose the information can reasonably be said to have deprived the defendant of a fair trial.  The test is necessarily backward-looking; and the uncertainty created by a backward-looking test is part of the motivation for uncertain prosecutors to err on the side of caution.

Several of Jacobs's requests go beyond the information that the government has represented that it has already provided.  For example, Jacobs requests case names and docket numbers for "prosecutions in which the cooperating witness(es) and confidential informant(s) utilized in this case has previously been utilized as a cooperating witness(es) and confidential informant(s)," and for "any trials or evidentiary hearings at which each prospective Government witness has testified concerning: his/her own prior criminal activity; payments or rewards provided him/her by the Government; efforts made to induce others to participate in criminal activity; or other purported law enforcement-related matters."   Def.'s Mot. [Doc. #72] at 2, ¶¶

B, C.  The memorandum in support of this motion suggests that such items could contribute to the plaintiff's defense. 2

The government's representations do not address the specific items that Jacobs has requested.  Instead, the government says it has disclosed "the witness's . . . criminal history," and it will disclose its "report of the Government's interview with the cooperating witness," Gov't Resp. [doc. #97] at 3, but one could easily see how these items might omit case names and docket numbers for other cases where this witness has testified.

Nevertheless, the government represents that it has "fully and completely" complied with this district's Standing Order on discovery and its obligations under *Brady* and its progeny, and that it will continue to do so.  Gov't Resp. [doc. #97] at 2.  Placing reliance upon that representation, I see no reason to order the government to produce broad, speculative categories of information which may not exist, or which the government may have withheld upon a determination that such information is not "material" to the fairness of the trial.

> District courts in this circuit routinely accept this type of representation that the Government has made concerning *Brady* and *Giglio* material.  Moreover, defendants' request for such information amounts to no more than "mere speculation" that the Government has not provided everything that it is obligated to disclose, which is insufficient to justify any order of additional disclosure or discovery.

*United States v. Calhelha*, 456 F. Supp. 2d 350, 369 (D. Conn. 2006) (Arterton, J.) (internal quotation marks, brackets, footnotes, and citations omitted).

For the foregoing reasons, Jacobs's motions for *Brady* and *Giglio* material [docs. ##72, 74] are denied without prejudice.

---

2       For example, Jacobs argues that "[e]xperience has shown that where an informant utilizes undue persuasion in one case to induce an individual to participate in a criminal offense, he is likely to use the same tactic in other cases."  Def.'s Mem. [doc. #73] at 2.

**III.     Defendant's Motion for Early Disclosure of  Rule 16(a) and Jencks Act Material
[doc. #77]**

Jacobs recognizes that "[t]he Jencks Act (18 U.S.C. §3500) provides for disclosure to the

defense of grand jury testimony of a witness, but only after such witness has testified at a trial of

hearing."  Def.'s Mem. [doc. #78] at 1.

Nevertheless, Jacobs argues that "reasons which strike to the heart of judicial economy

and fundamental fairness constitute a sufficient showing as to why early disclosure of grand jury

testimony must be made," and he requests early disclosure pursuant to the authority in Fed. R.

Crim. P. 16(d), which permits the district court to modify discovery orders based upon a

"sufficient showing."  Def.'s Mem. [doc. #78] at 1.

However, defendant's argument finds no support in Rule 16.  The phrase "sufficient

showing" does not appear in the rule.  It does appear in the Advisory Committee notes, but there

only to inform the reader that Rule 16(d) "gives the court authority to *deny*, *restrict* or *defer*

discovery upon a sufficient showing."   Nowhere does it suggest that discovery may be

accelerated in a fashion that would run counter to the express language of the Jencks Act. [3]

However, as other district courts within the Second Circuit have pointed out, "[t]he

Second Circuit has repeatedly emphasized that the government's *constitutional* obligations to

disclose material exculpatory or impeaching evidence trump [the Jencks Act]'s constraints on

the disclosure of witness statements."  *United States v. Vilar*, No. 05-cr-621(RJS), 2008 WL

2531195, *1 (S.D.N.Y. June 22, 2008) (collecting Second Circuit cases standing for this

proposition); *see also United States v. Rittweger*, 524 F.3d 171, 181 n.4 (2d Cir. 2008)

---

[3]     Indeed, Rule 16 specifically exempts Jencks Act material from its scope: "Nor does this rule
authorize the discovery or inspection of statements made by prospective government witnesses
*except as provided in 18 U.S.C. § 3500*."  Fed. R. Crim. P. 16(a)(2) (emphasis added).

("Complying with the Jencks Act, of course, does not shield the government from its independent obligation to timely produce exculpatory material under *Brady* — a constitutional requirement that trumps the statutory power of 18 U.S.C. § 3500.").

The government argues that "a district court may not order advance disclosure inconsistent with the Act itself," and it further represents that it "has already produced certain Jencks Act material related to its cooperating witness/defendant, and will continue to do so on a rolling basis as that material is prepared."  Gov't Resp. [doc. #97] at 4.

Based upon those representations, and also upon the government's representations that it has already "fully and completely" complied with its obligations under *Brady* and its progeny, Gov't Resp. at 2, I see no immediate need for any additional orders in this respect.  I only remind the government that its *Brady* obligations trump the Jencks Act, that such obligations include the obligation to produce impeachment materials consistent with *Giglio*, and that such material must be produced "in time for its effective use at trial."  *Coppa*, 267 F.3d at 135, 142.

## IV.  Defendant's Motion for Preservation and Disclosure of Agents' Rough Notes Pursuant to Federal Rule of Criminal Procedure 16 [doc. #81]

Jacobs requests "an Order requiring the Government to preserve the law enforcement agents' rough notes of any interviews that were conducted with the Defendant," and that such notes be "disclosed to the Defendant at least 2 weeks prior to trial."  Def.'s Mot. [doc. #81] at 1-2.

The government responds that it has conducted only one interview with the defendant. "To the extent 'rough notes' were taken in connection with that interview and the Government is required to produce them pursuant to Rule 16, the Government will do so in advance of trial." Gov't Resp. at 5-6.

There is clear precedent in this judicial district for ordering the preservation and disclosure of such notes. *See United States v. Ferguson*, 478 F. Supp. 2d 220, 235-37 (D. Conn. 2007) (Droney, J.) (noting a split of authority between circuits, observing that the Second Circuit has not addressed the issue since the pre-1991 decision in *Koskerides,* and concluding that although the Advisory Committee notes to the 1991 amendment "provide support both for and against disclosure of the rough notes," "the plain language of the rule requires disclosure of the interview notes"); *see also United States v. Ionia Mgmt. S.A.*, No. 3:07-cr-134(JBA), 2007 WL 2298570, *1-2 (D. Conn. Aug. 3, 2007) (Arterton, J.) (conducting a similar analysis, citing *Ferguson*, and ordering disclosure of such notes).

Accordingly, defendant's motion will be granted. Furthermore, given that approximately three weeks remain before jury selection in this case, I find it appropriate that the agents' notes should be disclosed to defendant immediately.

## V.   Defendant's Motion for Discovery of Information Concerning Witnesses and Informants [doc. #91]

This motion requests a laundry list of information regarding "confidential sources, witnesses and informants, including, but not limited to, the individual referred to in the discovery as the confidential informant (C/I)." Def't Mot. [doc. #91] at 1. The motion also requests, *inter alia*, "[c]opies of all pretrial service/probation reports concerning the above-referenced C/I," *id.* at 2, ¶ 7, and "[t]he opportunity to interview the above-referenced C/I and/or any other confidential sources . . . at a reasonable time prior to trial." *Id.* ¶ 8.

In the introduction to the memorandum in support of this motion, Jacobs argues the following:

> The Stamford Police Department reports and the arrest and
> search warrant affidavits make reference to statements, conduct

and information obtained by a confidential informant (C/I) (hereafter referred to as C/I). It is clear that the C/I provided information to the Stamford police that lead to the investigation of the Defendant and/or his arrest. The C/I claimed to have witnessed the Defendant distributing crack cocaine, but not much more is known about this individual and his/her credibility and reliability. Moreover, it is unclear from the discovery what the source is of the C/I's alleged knowledge of the Defendant.

In sum, the C/I has been an integral component of the Stamford police's investigation. He/She is likely to be an eyewitness who possesses information bearing directly on the defense.

Def.'s Mem. [doc. #92] at 1.

In response, the government makes the following representations:

The CI in this case was not a witness to any of the narcotics transactions as to which the Government will present evidence at trial. Rather, during May 2008, the CI, who was known by the investigating officers to be reliable, provided information that the defendant was selling crack cocaine, and would likely be willing to sell crack cocaine to a stranger. The CI also provided investigating officers with the defendant's cellular telephone number. The investigative officers then used an undercover law enforcement officer to contact the defendant and to purchase crack cocaine from him and his co-defendant. The CI was not present during that initial transaction, nor any subsequent transaction initiated during the investigation. Therefore, the CI is not a witness, and the defendant has failed to show that disclosure of his/her identity is required under *Roviaro v. United States*, 353 U.S. 53 (1957) and its progeny.

Gov't Resp. at 9.

The standard for disclosure of a confidential informant is set out in *Roviaro v. United States*, 353 U.S. 53 (1957), and its progeny. In *Roviaro*, the Supreme Court held that "[w]here the disclosure of an informant's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60-61. The Second Circuit "has interpreted *Roviaro* to require

-11-

disclosure when it is 'material to the defense.'  . . . The judge must consider a number of factors in determining whether the informant's testimony is material: 'the crime charged, the possible defenses, the possible significance of the informant's testimony and other relevant factors.'" *DiBlasio v. Keane*, 932 F.2d 1038, 1041-42 (2d Cir. 1991) (quoting *United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir. 1988)) (affirming grant of new trial after habeas corpus petition). However, "[t]he burden of establishing the need for disclosure is upon the person who seeks it. This burden is not met by mere speculation that identification might possibly be of some assistance."  *In re United States*, 565 F.2d 19, 23 (2d Cir. 1977) (citations omitted).

Based upon the parties' current submissions, I find it highly unlikely that the identity or statements of the confidential informant could in any way be relevant to the defense.  The analysis in *United States v. Holguin*, 946 F. Supp. 157, 160-61 (D. Conn. 1996) (Squatrino, J.), is particularly instructive.  In that case, the confidential informant might have played an important role in the prosecution by providing probable cause for an arrest, and this gave the court sufficient cause to interview the confidential informant *in camera*.[4]  Furthermore, the court indicated its intention, upon that interview, to consider "three factors . . . when weighing the parties' competing interests in determining whether the disclosure of the CI is warranted," namely "whether the confidential informant was an eyewitness or mere tipster, the relationship between the issue and the probable testimony of the confidential informant, and the government's interest in nondisclosure." *Id.* at 161.

None of the factors provided by the Second Circuit, or articulated by this Court in *Holguin*, suggest that in the case at bar, information concerning the confidential informant is

---

[4]       In the case at bar, "the disclosures are sought for the preparation of a defense at trial and not for the sole purpose of challenging probable cause." Def's Mem. [doc. #92] at 3.

"material to the defense."  It seems plain that his or her role was one of a "mere tipster."  The defendant alleges "that the C/I actively participated in the investigation of the Defendant."  Def's Mem. [doc. #92] at 3.  That may be so.  However, despite that active participation, there is nothing in the defendant's motion or accompanying memorandum to suggest that the confidential informant will play any role in the trial on the merits.  There is also nothing to suggest that the informant could corroborate a defense of entrapment.[5]  Jacobs's motion is therefore denied without prejudice, and may be renewed if Jacobs seeks to interview the confidential informant for a specific purpose, or demonstrates a potential benefit to the defense which rises above the present "mere speculation."

## VI.    Defendant's Motion for Disclosure of Co-Conspirator Statements [doc. #83]

In this motion, Jacobs seeks "to elicit from the Government the identity and substance of those co-conspirator statements it intends to introduce at trial."  Def's Mem. [doc. #84] at 1.

The government has responded that "[t]o the extent that persons deemed to be co-conspirators will be called as government witnesses at trial, any relevant statements made by

---

[5]     I am mindful of the Second Circuit's discussion in *DiBlasio*, which built upon an earlier holding in *United States v. White*, 324 F.2d 814 (2d Cir. 1963).

> [In *White*], as here, defendant took the stand and testified that the informant induced him to commit a crime in order to help the informant. In DiBlasio's case, if the defense were believed, the apparent salesmanship of an eager drug dealer could be viewed as the playacting of a drug abuser who, having access to a small supply of cocaine, assumed the role of a dealer in order to aid a friend. However, as in *White,* the only witness who could corroborate this defense was the confidential informant.

*DiBlasio*, 932 F.2d at 1043.  The Second Circuit also noted that once the entrapment defense was raised, "[t]he only remaining issue is whether the defense . . . [was] credible. This is a question reserved for the jury as fact-finder."  *Id.*

them and any impeachment material as to them that has not already been disclosed will be provided in accordance with the Jencks Act and the Standing Order."  Gov't Resp. at 7.

I find the government's statement to be inadequate.  Recognizing the general principle that statements by co-conspirators are not discoverable, *see In re United States,* 834 F.2d 283, 286 (2d Cir. 1987); *United States v. Percevault,* 490 F.2d 126 (2d Cir. 1974), I also recognize that the statements of co-conspirators can often contain information that is subject to Brady's disclosure obligations.  *Cf. In re United States*, 834 F.2d at 286 n.2 ("We are not concerned here with a demand for disclosure under *Brady v. Maryland* . . . ."); *United States v. Rittweger*, 524 F.3d 171, 181-82 (2d Cir. 2008) (disagreeing with the government's determination that certain co-conspirator statements "were not *Brady* material," and stating that "the government should have acted in favor of disclosing the *Brady* material earlier, particularly when earlier discovery would not have had the potential to harm the witness," but declining to overturn the conviction upon a conclusion that "there is no probability that the government's late disclosure of the evidence resulted in a different outcome in [the defendant's] case").

If the statements made by co-conspirators are material within the meaning of *Brady* and its progeny, it is not enough that they "will be provided in accordance with the Jencks Act." Gov't Resp. at 7.  I remind the government again that its *Brady* obligations trump the Jencks Act, *Rittweger*, 524 F.3d at 181 n.4, that such obligations include the obligation to produce impeachment materials consistent with *Giglio*, *see Coppa*, 267 F.3d at 139, and that such material must be produced "in time for its effective use at trial."  *Id.* at 135, 142.  In the case of a co-conspirator who the government plans to call as a witness at trial, that time is now, and the government is directed to produce any relevant statement to defense counsel forthwith.

**VII.    Defendant's Motion To Compel Notice from the Government of Intention To Use**

-14-

**Evidence [doc. #89]**

Jacobs asks the Court "to order the Government to provide him notice, as soon as is practicable, of the *specific* evidence the Government intends to use *in its evidence in chief* at trial, so that Defendant can move, if appropriate, to suppress such evidence."  Def.'s Mot. [doc. #89] at 1 (emphases added).  The motion is filed pursuant to Fed. R. Crim. P. 12(b)(4)(B), captioned "**Notice of the Government's Intent to Use Evidence.    At the Defendant's Request.**":

> At the arraignment or as soon afterward as practicable, the defendant may, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16.

Fed. R. Crim. P. 12(b)(4)(B).

The government responds that "the Government has disclosed all of the evidence that presently exists against the defendant," and that "as additional information becomes available, the Government, in accordance with its continuing discovery obligations, will turn it over to the defendant."  Gov't Resp. at 9.  The government therefore believes that Jacobs has sufficient information upon which to base any suppression motions he wishes to file.

Jacobs's motion repeats a familiar request: criminal defendants do not want to comb through all of the government's evidence and identify every possible objection that could be made, when in reality the government anticipates putting forward only a small fraction of that evidence at trial.  His memorandum points to the Advisory Committee notes that accompany the rule.  "Although the defendant is already entitled to discovery of such evidence prior to trial under rule 16, rule 12 makes it possible for him to avoid the necessity of moving to suppress

evidence *which the government does not intend to use.*"   Fed. R. Crim. P. 12, advisory

committee note to 1974 amendment (emphasis added).

While there are few appellate cases on point, many district courts have confronted the

tension between Rules 12 and 16.   That is a tension between reducing costs and conserving

judicial resources on the one hand, and forcing the government to reveal too much of its trial

strategy on the other hand.  I note in particular the thorough reasoning found in *United States v.*

*Lujan*, 530 F. Supp. 2d 1224 (D.N.M. 2008), where Judge Brack canvassed existing authority

before arriving at a middle course:

> I conclude that Defendants' motion should be granted in part. If
> the United States knows that it does not intend to introduce any
> evidence [that might reasonably be subject to a suppression
> motion] . . . then it must notify Defendants of this fact
> immediately, with a continuing obligation to supplement, in order
> to avoid the necessity of Defendants moving to suppress evidence
> that will not be introduced in the United States' case-in-chief at
> trial. Such notice will meet the purpose of the rule to reduce the
> needless filing of suppression motions that are not at issue, which
> will conserve court resources by avoiding litigation on irrelevant
> searches or interviews, without requiring the United States to
> disclose its trial strategy by forcing it to specify particular pieces
> of evidence it intends to present.

530 F. Supp. 2d at 1246 (citing *United States v. de la Cruz-Paulino*, 61 F.3d 986, 993 (1st Cir.

1995), and *United States v. Dyer,* 2007 WL 2326899 (E.D. Tenn. Aug. 10, 2007)).

By the same reasoning, I conclude that the government must notify Jacobs immediately

if, for any particular piece of evidence that might reasonably be subject to a suppression motion, [6]

---

[6]      Such types of evidence, as identified by the court in *Lujan*, include without limitation "a
particular warrantless search or seizure; search or seizure based on a warrant; surveillance;
interview; beeper or other tracking device; mail cover; [and] display of any defendant's photograph,
likeness, image, or voice-recording." 530 F. Supp. 2d at 1246.

it has no plans to introduce that evidence during its case-in-chief.  This order is subject to a continuing obligation to supplement.

Alternatively, if doing so would not force the government to disclose its trial strategy, the government may elect instead to provide Jacobs with a good-faith estimate of which pieces of evidence it plans to introduce during its case-in-chief at trial.  Such an estimate would be subject, of course, to last minute changes, provided those changes were made in good faith and for good cause.

**VIII.   Motion for Disclosure Pursuant to Federal Rule of Evidence 404(b) [doc. #79]**

In this motion, defendant seeks an order that the government "provide the Defendant's counsel with a written statement listing the nature, date and place of any criminal offense or act of misconduct, including any and all Rule 404(b) evidence that the Government intends to introduce at trial . . . ." Mot. [doc. #79] at 1.

The government responds with the following representation:

> At this time, the Government does not intend to introduce any 404(b) evidence in its case-in-chief against this defendant. Should that decision change at any time prior to trial, the Government will immediately notify the defendant of the specific 404(b) evidence at issue and the legal theory for the admissibility of such evidence.

Gov't Resp. [doc. #97] at 5.

Based on the government's representation, I see no need to issue any orders regarding 404(b) evidence at this time.  This motion is denied without prejudice.

**IX.   Defendant's Motion for Notice of Intent to Use Residual Hearsay Exception Under Rule 807 [doc. #85]**

Jacobs also asks the Court "to order the Government to provide notice of its intent to offer any statement not specifically covered by the hearsay exceptions set forth in Rules 803 and

-17-

804, and to provide notice of the particulars of the statement . . . ."  Def.'s Mot. [doc. #85] at 1.

The government makes the following response:

> At this time, the Government knows of no such statements.  If, at some point in the future, the Government becomes aware of the existence of residual hearsay statements that could be introduced at trial, it will immediately disclose its intention to use such statements at that time.

Gov't Resp. [doc. #97] at 7-8.

Based on the government's representation, I see no need to issue any orders on this subject at this time.  This motion is denied without prejudice.

**X.     Motion for Disclosure of Surveillance Evidence [doc. #76]**

This motion seeks production of materials constituting or relating to "surveillance of the Defendant relative to this case, including, but not limited to, any surveillance conducted by any federal law enforcement agency, the Stamford Police Department and/or Connecticut State Police."  Mot. [doc. #76] at 1.

The government responds with the following representation:

> The Government has already produced copies of all audio and video surveillance recorded in connection with its investigation of the defendant.  The Government has also produced all investigative reports related to that surveillance and the subject of that surveillance.

Gov't Resp. [doc. #97] at 4.

Based on the government's representation, I see no need for an order compelling any further production or discovery relating to surveillance evidence.  This motion is denied without prejudice.

**XI.     Defendant's Motion for Pretrial Disclosure of Demonstrative Evidence [doc. #87]**

Jacobs moves for an order that the government disclose "prior to trial, any and all demonstrative evidence . . . that the government reasonably anticipates will be offered in evidence at trial," noting that his motion "is meant to pertain to demonstrative evidence that has only 'illustrative' force."  Def.'s Mot. [doc. #87] at 1 & n.1.  To this, the government makes the following response:

> At the present time, the Government has not identified the evidence falling within this category.  To the extent that such evidence presently exists (such as audio and video recordings and photographs), it has either been provided to the defendant in discovery or is available to be viewed by his counsel.  The Government may offer maps, charts, diagrams and the like at trial. As soon as such exhibits are prepared, the Government will notify defense counsel and provide him with an opportunity to review it.

Gov't Resp. [doc. #97] at 8.

Based on the government's representation, I see no need to issue any orders on this subject at this time.  This motion is denied without prejudice.

## XII.    Conclusion

Based on the government's representations in its Omnibus Response [doc. #97], and for the foregoing reasons, I enter the following Orders:

- •    Defendant's Motion for Release of Brady Materials [doc. #72] and Motion for Giglio Material [doc. #74] are DENIED without prejudice.

- •    Defendant's Motion for Early Disclosure of Rule 16(A) and Jencks Act Material [doc. #77] is DENIED;

- •    Defendant's Motion for Preservation and Disclosure of Agents' Rough Notes Pursuant to Federal Rule of Criminal Procedure 16 [doc. #81] is GRANTED;

- Motion for Discovery of Information Concerning Witnesses and Informants [doc. #91] is DENIED without prejudice.

- Motion for Disclosure of Co-Conspirator Statements [doc. #83] is GRANTED in part and DENIED in part, as described in Part VI, *supra*.

- Motion to Compel Notice From the Government of Intent to Use Evidence [doc. #89] is GRANTED in part and DENIED in part, as described in Part VII, *supra*.

- Motion for Disclosure Pursuant to Federal Rule of Evidence 404(b) [doc. #79]; Motion for Notice of Intent to Use Residual Hearsay Exception [doc. #85]; Defendant's Motion for Disclosure of Surveillance Evidence [doc. #76]; and Motion for Disclosure of Demonstrative Evidence [doc. #87] are DENIED without prejudice.

It is SO ORDERED.

Dated: New Haven, Connecticut
        August 31, 2009

                                    */s/ Charles S. Haight, Jr.*
                                    Charles S. Haight, Jr.
                                    Senior United States District Judge